# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHWESTERN DIVISION

| | |
|---|---|
| THERMAL ENGINEERING INTERNATIONAL (USA) INC., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| vs. | ) Case No. 3:21-cv-05063-MDH |
| HYPRO, INC., | )<br>)<br>) |
| Defendant. | )<br>) |

## ORDER

Before this Court is Defendant Hypro Inc.'s ("Defendant's") Motion for Summary Judgment (Doc. 35) and Suggestions in Support (Doc. 36). Plaintiff Thermal Engineering International (USA) Inc. ("Plaintiff") responded (Doc. 41) and Defendant responded in turn. (Doc. 43). Following a defense verdict in Massachusetts federal court on a related case, this Court ordered Plaintiff and Defendant to further brief any possible collateral estoppel issues related to this case. (Doc. 46). Both parties complied with this Court's order (Docs. 48, 49) and replied in turn to the other party's pre-trial briefing (Docs. 50, 51, 52). In this subsequent briefing, Plaintiff indicated it does not intend to challenge the Massachusetts jury verdict. (Doc. 48 at 2-3). The Court has reviewed all briefing and the matter is now ripe for review. For reasons herein, Defendant's Motion for Summary Judgment is **GRANTED.**

## BACKGROUND

The dispute in this matter stems from Defendant's hiring Wrangler Bowman ("Bowman") and Jeremy Graham ("Graham") in 2021. Plaintiff alleges Defendant and Daryl Lanaville ("Lanaville"), a former employee of Plaintiff, induced Bowman and Graham to resign from their

1

employment with Plaintiff and begin working for Defendant, thereby violating a non-solicitation agreement.

Defendant's business focuses on the manufacture and assembly of equipment for use in a diverse array of industries including agriculture, mining, and forestry. Plaintiff supplies heat transfer technology to electric utility companies. Plaintiff and Defendant do not compete in the same industry. Plaintiff is one of twenty-one direct or indirect subsidiaries of Babcock Power, Inc. Altogether Babcock Power, Inc. employs about 950 people within the United States and seventy-seven abroad.

During 2020, Plaintiff employed Bowman as a superintendent at Plaintiff's manufacturing plant. During the same period, Plaintiff employed Graham as a product line supervisor and Lanaville in another management role. Bowman, Graham, and Lanaville worked at Plaintiff's Joplin, Missouri facility and were familiar with one another during their employment. Plaintiff terminated Lanaville's employment October 2, 2020. In connection with termination, Lanaville signed a Separation Agreement, which included a Non-Solicitation Agreement ("the Agreement"). The terms of the Agreement required Lanaville's confidentiality. In pertinent part, the Agreement states:

> (b) During the period of my employment with the Company and for one (1) year thereafter, regardless of the reasons for my termination of employment with the Company, I will not, other than in the course of performing my duties on behalf of the Company, directly or indirectly through another person or entity (i) induce or attempt to induce any employee, consultant or advisor of the Company to end its relationship with the Company, or in any way interfere with the relationship between the Company, on the one hand, and any employee, consultant or advisor thereof, on the other hand, (ii) knowingly hire any person who was an employee, consultant or advisor of the Company until twelve (1) months after such individual's relationship with the Company has been terminated…

2

Case 3:21-cv-05063-MDH    Document 53    Filed 03/24/23    Page 2 of 9

In exchange for the Agreement, Plaintiff provided Defendant with six-months salary and COBRA premium payments. Defendant hired Lanaville to manage its Venita, Oklahoma facility in March 2021, about six months following termination of his employment with Plaintiff.

Several weeks after Defendant hired Lanaville, Bowman called Lanaville to ask general questions about Lanaville's new employer. Bowman testified that, though he had grown dissatisfied with some elements of his employment with Plaintiff, at the time of this conversation with Lanaville, Bowman had applied for no alternative employment, lacked a resume, and intended to remain with Plaintiff until retirement. Following the conversation with Lanaville, Bowman traveled to Defendant's facility in Venita, Oklahoma where Lanaville provided a tour and discussed specific employment opportunities. Lanaville testified that after this initial tour he communicated with Chad Leuder ("Leuder"), another of Defendant's senior managers, "to update him on the TEi connection." Lanaville then provided a second tour of the facility to Bowman, this time accompanied by Graham. Lanaville further testified Bowman and Graham reached out to Lanaville the day following the second tour and expressed specific interest in employment with Defendant. Lanaville then arranged a dinner at a restaurant near Defendant's Venita facility, during which Bowman and Graham met Leuder. Leuder testified Lanaville conducted interviews of Bowman and Graham on Defendnat's behalf prior to that dinner. While a recruiter for Defendant initially expressed doubt about Graham's qualifications for an engineering manager role, Graham's application nonetheless proceeded to the "interview" stage, after Lanaville expressed support to the recruiter for Graham's candidacy.

Bowman officially resigned from employment with Plaintiff May 26, 2021, while Graham did the same the following day. Lanaville received a cease-and-desist letter from counsel for

3

Plaintiff May 28, 2021. Lanaville reviewed the language of the Agreement, concluded he was not in violation, and informed Leuder of the same. Lanaville testified at deposition this conversation with Leuder occurred before receiving the cease-and-desist letter, while Leuder claimed the conversation occurred following receipt of the letter. Defendant hired Bowman and Graham in late May.

Plaintiff brought the present action in the Circuit Court of the 29th Judicial Circuit, State of Missouri in June 2021, alleging tortious interference and unjust enrichment. The matter was later removed to this Court based on diversity jurisdiction. Also in June 2021, Plaintiff filed suit against Lanaville in Massachusetts federal court under case number 1:21-cv-01937-NMG, alleging breach of contract. On February 10, 2023, a Massachusetts federal jury returned a verdict in favor of Lanaville, specifically finding Lanaville breached his contract with Plaintiff, but Plaintiff suffered no harm as a result of any breach. Prior to ruling on Defendant's pending summary judgment motion, this Court ordered the parties to brief the issue of collateral estoppel as it pertains to the Massachusetts jury verdict's impact on this case.

## STANDARD OF REVIEW

Summary judgment is proper where, viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Reich v. ConAgra, Inc.*, 987 F.2d 1357, 1359 (8th Cir. 1993). "Where there is no dispute of material fact and reasonable fact finders could not find in favor of the nonmoving party, summary judgment is appropriate." *Quinn v. St. Louis County*, 653 F.3d 745, 750 (8th Cir. 2011). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986). If the movant meets the initial step, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To satisfy this burden, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## DISCUSSION

### I. Tortious Interference

The parties agree collateral estoppel precludes re-litigation of Plaintiff's tortious interference claim against Defendant following the Massachusetts jury verdict. Plaintiff indicates it does not intend to challenge the jury verdict and that it does not object to this Court entering summary judgment in favor of Defendant as to Count One. This Court agrees that collateral estoppel bars Plaintiff's tortious interference claim moving forward. Therefore, Defendant's Motion for Summary Judgement is **GRANTED** as to Count One.

### II. Unjust Enrichment

The parties disagree about the preclusive effect of the Massachusetts jury verdict on Plaintiff's Unjust Enrichment claim in Count Two. Under Missouri law, collateral estoppel applies when: "1) the issue decided in the prior adjudication was identical to the issue presented in the present action; 2) the prior adjudication resulted in a judgment on the merits; 3) the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and 4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *Orem v. Orem*, 149 S.W.3d 589, 592 (Mo. Ct. App. 2004). Plaintiff argues that, because breach of contract, at issue in the Massachusetts trial, and unjust enrichment

consist of different elements under Missouri law, collateral estoppel does not prevent litigation of Plaintiff's remaining unjust enrichment claim. Defendant argues that because Defendant alleged the same damages in the Massachusetts case and the present case, collateral estoppel precludes any further litigation as to unjust enrichment. The matter to address, therefore, is whether the issue of damages decided by the Massachusetts jury during the breach trial is identical to the issue of whether Defendant conferred a benefit to Plaintiff for unjust enrichment purposes.

This Court finds the issues to be identical for purposes of defensive collateral estoppel. Under Missouri law, breach of contract requires, "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff." *Rental Co., LLC v. Carter Grp., Inc.,* 399 S.W.3d 63, 67 (Mo. Ct. App. 2013) (citations omitted). On the other hand, unjust enrichment requires, "(1) a benefit conferred by a plaintiff on a defendant; (2) the defendant's appreciation of the fact of the benefit; and (3) the acceptance and retention of the benefit by the defendant under circumstances in which retention without payment would be inequitable." *Id*. Missouri courts recognize unjust enrichment and breach of contract as separate and distinct causes of action. *Id*. Evidence that speaks to whether Plaintiff suffered damages for the breach of contract claim, may nonetheless be identical to evidence about whether Plaintiff conferred a benefit on Defendant for purposes of unjust enrichment. This is because the benefit conferred in an action for unjust enrichment reflects the damages plaintiff suffered.

As Defendant notes, in summary judgment briefing in both the present matter and in the Massachusetts case, Plaintiff asserts verbatim the same damages suffered. The following description of damages can be found in summary judgment briefing for both cases.

> The only monetary damages asserted by TEi consist of the costs to recruit and train replacements for the two employees it lost to HyPro. (Horace Dec., ¶ 6, Exh. D, (Murakoshi/TEi Depo Tr.), pp. 98:19-105:11.)
>
> **Response**: TEi controverts this Paragraph. In addition to the damages TEi incurred because it had to replace Bowman and Graham, TEi suffered additional and substantial damages because the departure of two key employees at a critical time meant TEi was unable to meet certain deadlines in its contracts and incurred losses in the form of contract penalties. (Laubenstein Dec, Ex. E (K. Murakoshi Dep. Tr.), 101:1-8; 101:21-102:7; Kedrowski Decl., ¶¶ 9-10.) TEi also was damaged by the fact that it gave Lanaville six months of salary continuation and six months of payment of his COBRA premium to continue participation in TEi's medical, dental, and vision benefit plans in exchange for his agreement not to violate the Agreement, and TEi did not get the benefit of its bargain in that regard. (Kedrowski Dec., ¶ 4.). (1:21-cv-01937-NMG Doc. 69 at 9 and 3:21-cv-05063-MDH Doc. 41 at 15).

The record in the present matter altogether lacks allegations or evidence of damages or benefits conferred beyond those described above.[1] Because the Massachusetts jury has determined Plaintiff did not in fact suffer the above-described damages, Plaintiffs are estopped from asserting these same damages evidence a benefit conferred for purposes of the unjust enrichment claim. The dispositive matter here is that Plaintiff's assertion that the same evidence speaks to both damages in the breach of contract action against Lanaville and benefit conferred in the unjust enrichment claim against Defendant, renders these factual inquiries indistinguishable. It is for this reason Plaintiff is estopped from continuing to pursue the unjust enrichment claim.

Perhaps more importantly, Defendant remains entitled to summary judgement on Plaintiff's unjust enrichment claim regardless of the Massachusetts verdict. In its original summary judgment briefing, Defendant claims Plaintiff conferred no discernable benefit on Plaintiff because

---

[1] Defendant claims Plaintiff's most recent pre-trial briefing asserts a new theory of damages for the first time: Defendant was able to onboard Bowman and Graham with rather little effort. Defendant notes that this allegation lacks any quantified account of damages and appears for the first time well after the close of discovery. It does not appear to this Court that Plaintiff's statement about onboarding rises to the level of an allegation about damages. This is in part because it simply would make no sense to say that Defendant has conferred a benefit on Plaintiff in the form of an easy onboarding process for Defendant's new employees. To the extent Plaintiff intended this statement to be a new, additional allegation about damages related to the unjust enrichment claim, this Court denies it as untimely.

employees are generally free to pursue and accept alternative employment, independent of any action on the part of Defendant. Plaintiff in response argues, "the benefit—two valuable employees with substantial skills and leadership experience—went directly from [Plaintiff] to [Defendant], and that occurred because Defendant wrongly facilitated Lanaville's breach of his employment agreement." (Doc. 41 at 34).

The act of hiring a new employee, however, does not indicate the employee's former employer has somehow conferred a benefit on the new employer. To suggest the opposite would conceivably make any subsequent employer liable to prior employers if the subsequent employer failed to compensate the former employer for the new employee. An employee's new employer does not compensate her former employer upon her hiring, even if that former employer is directly responsible for developing the employee's skills and expertise. Missouri courts have held, "An unjust enrichment has occurred where a benefit was conferred upon a person in circumstances in which the retention of the benefit, without paying its reasonable value, would be unjust." *JB Contracting, Inc. v. Bierman*, 147 S.W.3d 814, 818–19 (Mo. Ct. App. 2004) (citations omitted). Implied within this finding is that the conferring party must grant something of value to the receiving party *for which reasonable compensation is owed*. Here, Plaintiff has not *granted* Bowman and Graham to Defendant. Nor has Plaintiff *granted* skills possessed by Bowman and Graham to Defendant, even if those skills were acquired during employment with Plaintiff.[2]

An employee's participation in the labor market generally represents his or her personal decision to seek alternative employment, independent of any action on the part of the former employer, regardless of skills gained during prior employment. Plaintiff appears to recognize this

---

[2] Plaintiff does not argue, and no evidence suggests, Bowman and Graham brought something other than general skills and leadership experience to Defendant upon their hiring. Plaintiff and Defendant operate in different industries and trade secrets are not at issue.

when it argues under Count One, "Had Bowman and Graham—or any other TEi employee—decided to leave TEi for HyPro independent of Lanaville's machinations, the Agreement would not have been implicated." (Doc. 41 at 22). Any wrongfulness surrounding the employee's departure does not impact whether a benefit has been conferred. Put differently, any possible wrongfulness, in this case Lanaville's breach, does not somehow render Defendant's hiring of Bowman and Graham a conferral of a benefit for purposes of unjust enrichment. For this reason, Plaintiff's unjust enrichment claim fails as a matter of law, independent of the Massachusetts jury verdict. Plaintiff's Motion for Summary Judgement is **GRANTED** as to Count Two of Plaintiff's Complaint.

## CONCLUSION

For foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Summary judgment is entered in favor of Defendant.

**IT IS SO ORDERED.**

Dated: March 24, 2023                                  */s/ Douglas Harpool*
                                                      **DOUGLAS HARPOOL**
                                                      **United States District Judge**